1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

TERRY LEE GRANT,

                      Petitioner,

     v.

MICHAEL OBENLAND,

                     Respondent.

Case No. C13-1729-JLR-MAT

REPORT AND RECOMMENDATION

14

## INTRODUCTION AND SUMMARY CONCLUSION

15

16

17

18

19

20

21

22

23

       Petitioner Terry Grant is a Washington prisoner who is currently confined at the Clallam Bay Corrections Center in Clallam Bay, Washington.  He seeks relief under 28 U.S.C. § 2254 from a 2010 Snohomish County Superior Court judgment and sentence.  Before the Court in this proceeding is petitioner's original petition for writ of habeas corpus and his supplement to his original petition.  Respondent has filed answers to the original and supplemental petitions, as well as relevant portions of the state court record.  This Court, having reviewed the original and supplemental petitions, respondent's answers thereto, and the balance of the record, concludes that petitioner's federal habeas petitions should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

FACTUAL HISTORY

The Washington Court of Appeals summarized the facts underlying petitioner's conviction as follows:

> On a December morning in 2008, Joanne Bigelow was home alone. She heard the doorbell. When she opened her door, two men with guns pushed their way inside. They told her she would not be hurt if she did everything they told her to do. They bound her ankles and tied her wrists behind her back with plastic tie wraps. Then they dragged her from the foyer to a downstairs bathroom.
>
> Over the course of the next three hours, the intruders ransacked her house. Periodically they questioned her at gunpoint, seeking, among other things, her personal identification number. They accused her of lying, hit her, pulled her hair, and repeatedly threatened her. Bigelow overheard them discussing whether to wrap her in a plastic bag and take her to the bank, or "just shoot her through the door." The robbers took televisions, cameras, jewelry, guns, and the rings from Bigelow's fingers.
>
> Eventually they bagged the loot and left, and Bigelow managed to escape. She ran to her neighbor's house and called police. Grant was identified as one of the robbers and was charged with first degree robbery and first degree kidnapping. The jury found him guilty on both counts and the trial court imposed an exceptional sentence.

(Dkt. 8, Ex. 2 (footnote omitted).)

The Court of Appeals summarized additional relevant facts in one of petitioner's personal restraint proceedings:

> On December 4, 2008, Grant and an accomplice forced their way into the home of Joanne Bigelow, tied her up, and ransacked her home for several hours. After the robbery, Kristina [Grant's sister] helped Grant unload property stolen from the Bigelow home, and she saw jewelry and camera equipment as well as checkbooks and credit cards bearing the names of Bigelow family members. Kristina heard Grant talking to his accomplice about how they got the stolen property. Kristina also gave police a statement about her knowledge of the Bigelow robbery.

(Dkt. 35, Ex. 29 at 2.)

REPORT AND RECOMMENDATION
PAGE - 2

<u>PROCEDURAL HISTORY</u>

### 1.      State Court Procedural History

Petitioner appealed his conviction to the Washington Court of Appeals and, on December 24, 2012, the Court of Appeals issued an opinion, published in part, affirming petitioner's convictions but remanding for correction of a scrivener's error in the judgment and sentence.[1] (*See* Dkt. 8, Exs. 2, 3, 4, 5, 6, 7 and 8.)

Petitioner next sought review by the Washington Supreme Court.   (*See id.*, Ex. 9.) Petitioner identified a single issue in his petition for review:

> Whether a kidnapping conviction must be vacated on sufficiency of the evidence grounds where the kidnapping is incidental to another crime?

(*See id.*, Ex. 9 at 1.)   The Supreme Court issued an order denying review without comment on July 10, 2013.  (*Id.*, Ex. 10.)  The Washington Court of Appeals issued its mandate terminating direct review on August 2, 2013.  (*Id.*, Ex. 11.)

On May 10, 2010, while his direct appeal was pending in the Court of Appeals, petitioner filed a personal restraint petition in the Court of Appeals in which he asserted that he was being denied access to the law library at the Snohomish County Jail.  (*Id.*, Ex. 12.)  The Court of Appeals dismissed that petition on October 4, 2010, and issued a certificate of finality in that proceeding on November 22, 2010.  (*Id.*, Exs. 14 and 15.)

On or about May 19, 2010, petitioner filed a CrR 7.8 motion for relief from judgment in the Snohomish County Superior Court seeking to vacate his conviction based on the state's failure to disclose exculpatory evidence obtained in connection with a related case.  (Dkt. 35, Ex. 24.)  Petitioner's motion was transferred to the Court of Appeals for consideration as a personal

---

[1]  The corrected judgment and sentence was entered on October 17, 2013.  (*See* Dkt. 8, Ex. 1.)

REPORT AND RECOMMENDATION
PAGE - 3

restraint petition, and the Court of Appeals thereafter stayed the petition pending a final decision on petitioner's direct appeal.  (Dkt. 35, Exs. 25, 26 and 28.)  On September 10, 2013, the Court of Appeals lifted the stay and dismissed the petition.  (*Id.*, Ex. 29.)  The Court of Appeals issued a certificate of finality in that proceeding on December 4, 2013.  (*Id.*, Ex. 30.)

On August 6, 2010, petitioner filed another personal restraint petition in the Washington Court of Appeals in which he asserted that his trial counsel rendered ineffective assistance and that the trial court should have suppressed the victim's identification of petitioner.  (*Id.*, Ex. 31 at 8-24.)  On October 4, 2010, the Court of Appeals stayed the petition pending a final decision on petitioner's direct appeal.  (*Id.*, Ex. 32.)  The Court of Appeals lifted the stay on September 10, 2013, and transferred the petition to the Washington Supreme Court for consideration.  (*Id.*, Ex. 33.)  On December 8, 2014, the Supreme Court Commissioner issued a ruling dismissing petitioner's personal restraint petition.  (*Id.*, Ex. 38.)  The Supreme Court issued a certificate of finality in that proceeding on January 23, 2015.  (*Id.*, Ex. 39.)

### 2.    *Federal Court Procedural History*

Petitioner presented his original federal habeas petition to this Court for filing on September 23, 2013, and he asserted therein a single ground for relief.  (*See* Dkt. 1.)  The petition was thereafter served on respondent, and respondent filed a timely response to the petition on November 8, 2013, together with portions of the state court record.  (*See* Dkts. 4, 5 and 7.)  On January 31, 2014, respondent was directed to supplement the record with a copy of the transcript of petitioner's trial.  (Dkt. 10.)  The trial transcripts were received by the Court on February 6, 2014.  (Dkt. 12.)

On March 6, 2014, petitioner filed a motion seeking to stay these proceedings until the Washington Supreme Court resolved the personal restraint petition in which petitioner had

REPORT AND RECOMMENDATION
PAGE - 4

asserted his claim of ineffective assistance of counsel.  (Dkt. 13.)  Respondent opposed petitioner's motion to stay on the grounds that the request was untimely.  (Dkt. 15.)  On March 27, 2014, this Court issued an Order granting petitioner's motion to stay.  (Dkt. 17.)  While this matter was stayed, petitioner filed a motion seeking to amend his federal habeas petition to add the claims which were then pending before the Washington Supreme Court.  (Dkt. 18.)  Respondent did not oppose plaintiff's request to amend, and on May 13, 2014, this Court issued an Order granting plaintiff leave to supplement his original petition with his new claims.  (Dkts. 19 and 20.)  The supplemental petition was filed on the same date.  (Dkt. 21.)

On February 12, 2015, respondent filed a motion seeking to lift the stay because a certificate of finality had been issued in petitioner's personal restraint proceedings.  (Dkt. 24.)  On March 12, 2015, this Court issued an Order granting respondent's motion to lift the stay and directing respondent to file an amended answer which included his response to the claims assert by petitioner in both his original and supplemental petitions.  (Dkt. 26.)  On May 22, 2015, respondent filed a response to petitioner's supplemental petition together with additional relevant portions of the state court record.[2]  (*See* Dkts. 31, 32 and 35.)  This matter is now ripe for review.

The documents which have been considered by this Court in preparing this recommended disposition of petitioner's federal habeas action are petitioner's original petition (Dkt. 1), respondent's answer to petitioner's original petition (Dkt. 7), respondent's submission of relevant state court record (Dkt. 8), respondent's supplemental submission of relevant state court record (Dkt. 12), petitioner's supplement to his federal habeas petition (Dkt. 21), respondent's answer to

---

[2]  The Court notes that respondent failed to comply with the directive that he submit an amended answer addressing all of petitioner's claims and instead simply incorporated by reference his answer to the original petition into his answer to the supplemental petition.  However, as it would be time consuming to require respondent to correct this error at this juncture, the Court accepts the answer to the supplemental petition as filed.

REPORT AND RECOMMENDATION
PAGE - 5

the supplemental petition (Dkt. 31), and respondent's second supplemental submission of relevant state court record (Dkt. 35).

GROUNDS FOR RELIEF

Petitioner identifies a single ground for relief in his original petition for writ of habeas corpus:

> The evidence was insufficient to prove the elements of kidnapping as a crime separate from robbery.

(Dkt. 1 at 16.)

Petitioner identifies two additional grounds for relief in his supplemental petition:

1.      Trial counsel rendered ineffective assistance.

2.      The trial court erred in failing to suppress the victim's identification of petitioner.

(*See* Dkt. 21 at 1-6.)

DISCUSSION

Respondent concedes that petitioner properly exhausted his federal habeas claims by fairly presenting the claims to the Washington Supreme Court as federal claims.  Respondent argues, however, that petitioner is not entitled to relief in this action because the state courts reasonably denied the claims.  Respondent also argues, with respect to petitioner's sufficiency of the evidence claim, that the claim is not based on clearly established federal law.

Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an

REPORT AND RECOMMENDATION
PAGE - 6

1    unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

2        Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

3    court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

4    or if the state court decides a case differently than the Supreme Court has on a set of materially

5    indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).   Under the

6    "unreasonable application" clause, a federal habeas court may grant the writ only if the state

7    court identifies the correct governing legal principle from the Supreme Court's decisions, but

8    unreasonably applies that principle to the facts of the prisoner's case.  *See Williams*, 529 U.S. at

9    407-09.

10        The Supreme Court has made clear that a state court's decision may be overturned only if

11    the application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).  The

12    Supreme Court has further explained that "[a] state court's determination that a claim lacks merit

13    precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

14    of the state court's decision."   *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing

15    *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

16        Clearly established federal law, for purposes of AEDPA, means "the governing legal

17    principle or principles set forth by the Supreme Court at the time the state court render[ed] its

18    decision."  *Lockyer*, 538 at 71-72.  "If no Supreme Court precedent creates clearly established

19    federal law relating to the legal issue the habeas petitioner raised in state court, the state court's

20    decision cannot be contrary to or an unreasonable application of clearly established federal law."

21    *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86

22    (9th Cir. 2000)).

23        In considering a habeas petition, this Court's review "is limited to the record that was

REPORT AND RECOMMENDATION
PAGE - 7

before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-1400, 1415 (2011).  If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## Sufficiency of the Evidence

Petitioner asserts in his first ground for relief that the evidence presented at trial was insufficient to prove the elements of kidnapping as a crime separate from robbery.  The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove beyond a reasonable doubt each element of the charged offense.  *Carella v. California*, 491 U.S. 263, 265 (1989)(citing *In re Winship*, 397 U.S. 358, 364 (1970)).   When evaluating a claim of insufficiency of the evidence, a reviewing court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The Supreme Court emphasized in *Jackson* that constitutional sufficiency review is sharply limited and that the reviewing court owes great deference to the trier of fact.  *Id.*  In a federal habeas proceeding, the reviewing court also owes deference to the state courts' adjudication of the *Jackson* claim.  *Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).  Under *Jackson*, federal courts look to state law for the substantive elements of the offense, "but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *See id.* at 2064.

As noted above, petitioner was convicted on one count of first degree robbery and one

REPORT AND RECOMMENDATION
PAGE - 8

count of first degree kidnapping.   Petitioner argues that there was insufficient evidence to support his kidnapping conviction because the restraint and movement of the victim of his crime was incidental to the robbery.   In his petition, petitioner cites to the relevant federal law governing sufficiency of the evidence claims; *i.e.*, *Winship, supra*, and *Jackson, supra*.   (Dkt. 1 at 19.)   However, the specific claim advanced by petitioner in this federal habeas action is based almost exclusively on Washington law and, in particular, on the Washington Supreme Court's decision in *State v. Green*, 94 Wn.2d 216 (1980).   (*See* Dkt. 1 at 16-19 and Dkt. 9 at 3-12.)

*Green* involved an allegation that the defendant had committed aggravated murder in the first degree in furtherance of first degree kidnapping or first degree rape.   *Green*, 94 Wn.2d at 219.   The issue addressed by the court in *Green* was whether, under the standard announced by the United States Supreme Court in *Jackson*, the State had proved all of the essential elements of first degree kidnapping.   *See Green*, 94 Wn.2d at 224-25.   More specifically, the court considered whether there was sufficient evidence of restraint by means of secreting the victim. *Id*. at 225-28.   The court concluded that, viewing the evidence in the light most favorable to the State, no rational trier of fact could have found beyond a reasonable doubt that the victim had been restrained by means of secreting her in a place where she was not likely to be found.   *See id*. at 228.   The court characterized the movement and restraint in that case as incidental to the underlying homicide and noted that "the mere incidental restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of a true kidnapping."   *Id*. at 227.

In petitioner's case, the Washington Court of Appeals, on direct appeal, rejected the suggestion that, under *Green*, the State was required to prove that the kidnapping was not merely incidental to the robbery in order to satisfy due process requirements.   (Dkt. 8, Ex. 2 at 5-9.)   The

REPORT AND RECOMMENDATION
PAGE - 9

1  court concluded, consistent with *Jackson*, that in order to satisfy due process, the State was

2  required to prove the statutory elements of each crime beyond a reasonable doubt and that it had,

3  in fact, done so in petitioner's case.  (*See id*., Ex. 2 at 10.)  The court described the evidence of

4  first degree kidnapping as "ample" and summarized the evidence as follows:

> Grant and his accomplice pointed their guns at Bigelow, bound her hands
> behind her back, tied her feet together, and dragged her to a downstairs bathroom,
> where they kept her for approximately three hours.  They repeatedly returned to
> question her at gunpoint, threaten her, and assault her.  Bigelow overheard them
> discussing whether to shoot her.  This is restraint by threat of deadly force with
> intent to facilitate robbery.  Those are the elements of first degree kidnapping.

9  (*Id*., Ex. 2 at 5.)

10  The Washington Court of Appeals reasonably applied clearly established federal law in

11  determining that the evidence was sufficient to support petitioner's conviction on the charge of

12  kidnapping in the first degree.  Petitioner identifies no United States Supreme Court precedent

13  which requires a different result.  As petitioner's sufficiency of the evidence claim effectively

14  turns on a dispute concerning the proper application of *Green*, he has established no basis for

15  federal habeas relief.[3]  Accordingly, petitioner's petition for writ of habeas corpus must be

16  denied with respect to his sufficiency of the evidence claim.

<u>Ineffective Assistance of Counsel</u>

18  Petitioner asserts in his supplemental petition that his trial counsel, Ken Lee, rendered

19  ineffective assistance when he: (1) failed to consult with petitioner's prior attorney and

20  investigator; (2) failed to call Kristina Grant to testify at a suppression hearing; (3) failed to

---

22  [3] Respondent, in a submission of supplemental authority, directs the Court's attention to *State v. Berg*, 181 Wn.2d 857 (2014), an *en banc* decision in which the Washington Supreme Court clarified its decision in *Green*, holding that when kidnapping and robbery are charged separately, whether the kidnapping is incidental to the robbery is immaterial to the sufficiency of the evidence of kidnapping.  (*See* Dkt. 30-1 and 33-1.)

REPORT AND RECOMMENDATION
PAGE - 10

interview certain witnesses; (4) failed to timely hire an investigator; (5) failed to retain a DNA expert and call that expert at trial; (6) failed to impeach Kristina Grant with evidence that the state had provided her some inducement to testify against him;  (7) failed to object to evidence at trial; (8) failed to introduce evidence to impeach state witnesses; (9) failed to correctly convey the state's plea offer to petitioner; and, (10) was generally disorganized.  (*See* Dkt. 21 at 1.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*.  Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness.  *Id*. at 688.  Judicial scrutiny of counsel's performance must be highly deferential.  *Id*. at 689.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id*.  In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy.  *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance.  In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  The reviewing court need not address

REPORT AND RECOMMENDATION
PAGE - 11

1    both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

2         While the Supreme Court established in *Strickland* the legal principles that govern claims

3    of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate

4    whether defense counsel's performance fell below the *Strickland* standard.   *Harrington v.*

5    *Richter*, 131 S. Ct. 770, 785 (2011).   Rather, when considering an ineffective assistance of

6    counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's

7    application of the *Strickland* standard was unreasonable." *Id*.   As the Supreme Court explained

8    in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation

9    when the case involves review under the *Strickland* standard itself." *Id*.

10        ### 1.    *Failure to Consult with Prior Counsel/Defense Investigator*

11        Petitioner asserts that his trial counsel, Mr. Lee, rendered ineffective assistance when he

12   failed to consult with petitioner's prior defense attorney and prior defense investigator.  (Dkt. 21

13   at 1-2.)  Petitioner provides no explanation of this claim in his supplemental petition so the Court

14   must refer to his recently resolved personal restraint petition to understand the context of this

15   claim.  (*See id*.)

16        Petitioner explained in his personal restraint petition that on December 8, 2008, he was a

17   passenger in a vehicle that was pulled over by Pierce County officers, and that a subsequent

18   search of the vehicle resulted in the recovery of several duffel bags which contained property

19   taken from the Bigelow residence during the home invasion robbery on December 4, 2008.  (*See*

20   Dkt. 35, Ex. 31 at 8.)  Petitioner was booked into the Pierce County Jail on charges of possession

21   of stolen property, possession of stolen firearms, and unlawful possession of firearms, and he

22   remained there for six months until all of the charges were dismissed and petitioner was

23   transferred to Snohomish County to be tried on the charges at issue in this federal habeas

REPORT AND RECOMMENDATION
PAGE - 12

proceeding.  (Dkt. 35, Ex. 31 at 8.)  The contents of the duffel bags recovered in Pierce County were subsequently suppressed in the Snohomish County proceedings.  (*See id.*)  Petitioner claimed that prior to the suppression hearing in Snohomish County Superior Court, he asked Mr. Lee to contact his former lawyer and his former investigator in the Pierce County proceedings, and that Mr. Lee failed to do so.

The Washington Supreme Court rejected petitioner's claim that Mr. Lee's failure to consult with petitioner's previous defense counsel and defense investigator, noting that petitioner had neither provided nor cited any competent evidence to corroborate his assertions.  (*Id.*, Ex. 38 at 3.)  The Supreme Court also determined that even if petitioner's assertions were true, he had not explained how consultation with these individuals would have changed the result of either the suppression hearing or the trial.  (*Id.*)

Petitioner offers no evidence or argument in this proceeding challenging the Supreme Court's conclusion, and the record before this Court demonstrates that the state court reasonably rejected the claim based on petitioner's failure to provide any evidence of deficient performance or any explanation as to how such deficient performance prejudiced him.  Accordingly, petitioner's petition for writ of habeas corpus should be denied with respect to his first ineffective assistance of counsel claim.

### 2.    *Failure to Call Kristina Grant to Testify at Suppression Hearing*

Petitioner asserts that Mr. Lee rendered ineffective assistance when he failed to call Kristina Grant to testify at the hearing to suppress evidence found in the search of the duffle bags.  (Dkt. 21 at 1-2.)  Petitioner provides no explanation of this claim in his supplemental petition and reference to petitioner's personal restraint petition does little to clarify the claim. This Court therefore relies upon the explanation provided by the Washington Supreme Court in

REPORT AND RECOMMENDATION
PAGE - 13

addressing this claim in petitioner's personal restraint proceedings:

> Mr. Grant . . . asserts that counsel was ineffective in not calling his sister, Kristina Grant, as a witness in support of his motion to suppress her statements to police.  At trial Mr. Grant argued that Ms. Grant's statement to police that Mr. Grant was involved in the robbery was derivative of an automobile search incident to his arrest on an outstanding warrant.  The trial court suppressed evidence seized from the automobile but not Ms Grant's statement.  Mr. Grant does not demonstrate the existence of a valid basis for suppressing Ms. Grant's statement.  She called police on her own initiative and provided information soon after Mr. Grant was arrested.  Her statement was wholly unrelated to and independent from the automobile search.  *See State v. Warner*, 125 Wn.2d 876, 889, 889 P.2d 479 (1995) (information obtained from source independent from unlawful seizure admissible).  Thus, even if it can be argued that counsel should have called Ms. Grant as a witness, Mr. Grant does not show there is a reasonable probability that Ms. Grant's statement would have been suppressed.

(Dkt. 35, Ex. 38 at 3-4.)

Petitioner offers no evidence or argument in this proceeding challenging the Supreme Court's conclusion, and the record before this Court demonstrates that the state court reasonably rejected the claim on the grounds that petitioner demonstrated no prejudice resulting from the alleged deficient performance.  Accordingly, petitioner's petition for writ of habeas corpus should be denied with respect to his second ineffective assistance of counsel claim.

### 3.   *Failure to Interview Witnesses*

Petitioner asserts that Mr. Lee rendered ineffective assistance when he failed to interview potential defense witnesses Erin Narte, Sivi Mycropolis, Lori Kohler, Terrin Starnes, and Sean Grant.  (Dkt. 21 at 1-2.)  Petitioner provides no explanation of this claim in his supplemental petition so the Court must once again refer to his personal restraint petition to understand the specifics of this claim.  (*See id*.)

Petitioner asserted in his personal restraint petition that he informed Mr. Lee that he needed Erin Narte as a defense alibi witness because she saw petitioner during a period of time

REPORT AND RECOMMENDATION
PAGE - 14

when the Bigelow robbery was already well underway. (Dkt. 35, Ex. 31 at 13.) Petitioner complained that despite his insistence that Ms. Narte be secured as a witness for trial, she was never interviewed and Mr. Lee never called her or even put her on the defense witness list. (*Id*.)

Petitioner also asserted in his personal restraint petition that Mr. Lee failed to "investigate alternative avenues of suspects" by following up on information provided to the police by Sivi Mycropolis and Lori Kohler. (*See id*., Ex. 31 at 18.) Petitioner noted with respect to Ms. Mycropolis that she had reported seeing a black truck in her son's parking spot matching the description of the one taken during the Bigelow robbery, and that she had also reported seeing a blue passenger car matching the description of one used in the robbery later following the truck. (*Id*.) Petitioner noted with respect to Ms. Kohler that she had reported to police the day after the Bigelow home invasion that she saw individuals matching the descriptions of the Bigelow robbers. (*Id*.)

With respect to the final two individuals identified by petitioner as possible defense witnesses, petitioner asserted in his personal restraint petition that Terrin Starnes was a key defense witness, and that counsel failed to locate or interview this witness, but he failed to explain why he believed this individual to be a key witness or what testimony he believed she would have provided. (*Id*., Ex. 31 at 15.) Petitioner asserted with respect to Sean Grant only that Sean was not interviewed until the afternoon he testified at trial. (*Id*.)

The Washington Supreme Court rejected petitioner's claims regarding counsel's failure to interview potential witnesses, and explained its conclusion as follows:

> Mr. Grant next claims that defense counsel was ineffective in failing to interview five potential witnesses: Erin Narte, Sivi Mycropolis, Lori Kohler, Terrin Starnes, and Sean Grant. But counsel's decisions as to which witnesses to interview and call for trial are an integral part of trial strategy that is presumably reasonable. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 742, 101 P.3d 1

REPORT AND RECOMMENDATION
PAGE - 15

(2004).   And the duty to investigate "does not necessarily require that every conceivable witness be interviewed." *Id.* at 739 (quoting *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001)).   And an ineffectiveness claim cannot be based on the mere fact that a chosen tactic did not succeed. *State v. Renfro*, 96 Wn.2d 902, 909, 639 P.2d 737 (1982).   Mr. Grant thus must show that there were no conceivable legitimate tactical or strategic reasons for counsel's decisions on who to interview. *Grier*, 171 Wn.2d at 42.   And Mr. Grant must establish that he suffered prejudice from the allegedly deficient investigation.

Ms. Narte asserts by declaration that she would have testified that Mr. Grant was at Sean Grant's house at the time of the robbery and kidnapping.   The defense investigator indicated he could not locate Ms. Narte before trial, though the record does not show whether he attempted to call her at the telephone number Mr. Grant gave to his attorney.   Mr. Grant fails to show that Ms. Narte's testimony could have been secured by the time of trial.   And in any event, Sean Grant testified that Mr. Grant was at his house at the relevant time.   Mr. Grant fails to show that the jury would have found Ms. Narte more credible than Sean Grant.[4]

Ms. Mycropolis reported to police that she saw a black Toyota Tundra similar to a truck reported in connection with a crime parked in front of her home in a spot normally used by her son.   She later saw the truck driving away followed by a blue car.   Mr. Grant contends counsel should have interviewed Ms. Mycropolis in order to develop an "other suspect" theory of defense.   But Ms. Mycropolis's report was vague, she could not identify the driver of either the truck or the blue car, and the police report indicates she was not able to give more specific information.   Absent a clear nexus between the other person and the crime, a defendant cannot establish an "other suspect" defense. *State v. Strizheus*, 163 Wn. App. 820, 830, 262 P.3d 100 (2011), *review denied*, 173 Wn.2d 1030 (2012).   Given the lack of detail in Ms. Mycropolis's report and her statement that she could not provide more detail, Mr. Grant has not established that counsel was deficient in failing to interview her.[5]

As for Ms. Kohler, after hearing reports of the crime she confronted two men, one white and one black, who were in her neighborhood the day following the crime.   The two men said they were selling magazines.   Ms. Kohler took a photograph of the two men with her cellular phone and emailed it to her computer.   She later forwarded the photo to the police.   Mr. Grant claims defense

---

[4]   [Washington Supreme Court footnote]   According to Mr. Grant's opening brief in the Court of Appeals, Kristina Grant also testified she saw Mr. Grant in Sean's house at around 10:30 a.m., and that she saw him there again at about 12:30 p.m.

[5]   [Washington Supreme Court footnote]   The only detail Ms. Mycropolis gave the officer was the last three digits of the license plate on the truck, blacked out on the report.   If the truck was the same truck taken from the victim, locating the registered owner would not have provided other suspects.   And if it was not the same truck, there would have been no connection to the crime.

REPORT AND RECOMMENDATION
PAGE - 16

counsel should have interviewed Ms. Kohler for purposes of an "other suspect" defense. But he does not provide a copy of the photograph or a declaration by Ms. Kohler. And given the fact she saw the men a day after the crime was committed and there is no information relating the location where she saw them to the location of the crime, Mr. Grant fails to show that an interview of Ms. Kohler would have led to admissible "other suspect" evidence.

Defense counsel did interview Sean Grant, but Mr. Grant complains the interview was conducted too late (on the afternoon that he testified). Essentially, Mr. Grant speculates that had defense counsel interviewed Sean Grant earlier, the testimony would have been more favorable to the defense. The record shows earlier attempts to interview Sean Grant were unsuccessful. As indicated, the jury obviously disbelieved Sean Grant's testimony that Mr. Grant was at his house at the time the crimes were committed. Mr. Grant provides no evidence indicating that counsel could have done anything to make Sean Grant a more credible witness.

(Dkt. 35, Ex. 38 at 4-6.)

Once again, petitioner offers no evidence or argument in this proceeding challenging the Supreme Court's conclusion, and the record before this Court wholly supports the conclusion of the Supreme Court as to potential witnesses Erin Narte, Sivi Mycropolis, Lori Kohler, and Sean Grant. The Supreme Court did not specifically address petitioner's claim regarding potential witness Terrin Starnes, but this is likely because the claim as asserted in petitioner's personal restraint petition was too vague to warrant any analysis. In any event, nothing in the record suggests that Mr. Lee's failure to interview Ms. Starnes constituted deficient performance or resulted in any prejudice. For the foregoing reasons, petitioner's petition for writ of habeas corpus should be denied with respect to his third ineffective assistance of counsel claim.

### 4.    *Failure to Timely Employ Investigator*

Petitioner asserts that Mr. Lee rendered ineffective assistance when he failed to employ an investigator for six months after he was appointed to represent petitioner, and only employed an investigator after petitioner moved to terminate counsel and filed multiple grievances with the

REPORT AND RECOMMENDATION
PAGE - 17

bar.  (Dkt. 21 at 1-2.)  The Washington Supreme Court, in rejecting this claim, noted that the investigator was employed after motions to dismiss and to suppress evidence were denied, and concluded that the timing of hiring of the investigator was not unreasonable under the circumstances.  (Dkt. 35, Ex. 38 at 6.)  The Supreme Court further noted that petitioner had only speculated that the investigator, if employed earlier, could have obtained evidence that would have resulted in a better outcome on the suppression issue.  (*Id.*)

Petitioner offers no evidence or argument in this proceeding challenging the Supreme Court's conclusion, and nothing in the record before this Court demonstrates that petitioner suffered any prejudice as a result of counsel's failure to employ an investigator earlier in the proceedings.  Accordingly, petitioner's petition for writ of habeas corpus should be denied with respect to his fourth ineffective assistance of counsel claim.

### 5.    *Failure to Retain a DNA Expert*

Petitioner asserts that Mr. Lee rendered ineffective assistance when he failed to retain a DNA expert to evaluate the DNA evidence.  (Dkt. 21 at 1-2.)  The Washington Supreme Court rejected this claim, noting again that counsel's decisions as to which witnesses to call are presumed reasonable.  (Dkt. 35, Ex. 38 at 6-7.)  The Supreme Court further noted that petitioner had not presented any evidence indicating that expert testimony on DNA analysis would have resulted in an acquittal.  (*Id.*)

Petitioner offers no evidence or argument in this proceeding challenging the Supreme Court's conclusion, and the record before this Court demonstrates that the state court reasonably rejected the claim based on petitioner's failure to demonstrate any deficient performance or resulting prejudice.  A review of the trial transcript reveals that the issue of the DNA expert came up during a discussion of petitioner's motion to terminate Mr. Lee which petitioner presented to

REPORT AND RECOMMENDATION
PAGE - 18

1   the court on the first day of trial.  (Dkt. 12, Ex. 20 at 3.)  Mr. Lee explained to the court that he

2   had considered whether to have a DNA expert and had rejected the idea because the DNA

3   evidence was not conclusive and because he believed that a defense DNA expert would draw

4   more attention to the issue of the DNA which was not necessarily a good thing to do in the

5   circumstances of petitioner's case.  (*Id.*, Ex. 20 at 4-5.)

6        The trial court, in rejecting petitioner's motion to terminate Mr. Lee, noted that the

7   decision of whether or not to hire an expert is oftentimes a strategy determination made by

8   defense counsel, and that petitioner had not demonstrated that a DNA expert would necessarily

9   be required to review the methodology and/or the analysis that had been done by the state's

10  expert.  (*Id.*, Ex. 20 at 8-10.)

11       The record makes clear that the decision not to hire a DNA expert was a strategic one,

12  and petitioner makes no showing that this decision resulted in any prejudice.  Accordingly,

13  petitioner's petition for writ of habeas corpus should be denied with respect to his fifth

14  ineffective assistance of counsel claim.

15       ***6.***     ***Failure to Impeach Kristina Grant***

16       Petitioner asserts that Mr. Lee rendered ineffective assistance when he failed to impeach

17  Kristina Grant with evidence that the state had provided her some inducement to testify against

18  him.  (Dkt. 21 at 1-2).  Petitioner contends that the government "bought" Ms. Grant's testimony

19  by quashing a warrant and paying for a motel room.  (Dkt. 21 at 2.)  The Washington Supreme

20  Court rejected this claim, explaining its conclusion as follows:

21          Mr. Grant argues that defense counsel ineffectively failed to impeach
        Kristina Grant on the basis she received incentives for her testimony.  But he fails

22      to show the existence of impeachable evidence.  The defense interview notes
        indicate Ms. Grant received no incentives from the State in return for her

23      testimony.   And Mr. Grant does not provide any evidence to support his

allegations that she did receive incentives or show how such impeachment evidence would have created a reasonable probability that the result of the trial would have been different. . . .

(Dkt. 35, Ex. 38 at 7.)

Petitioner offers no evidence or argument in this proceeding challenging the Supreme Court's conclusion, and the record before this Court demonstrates that the state court reasonably rejected the claim based on petitioner's failure to demonstrate that Ms. Grant received incentives to testify or that any possible impeachment evidence would have altered the outcome of the trial.

The Court notes that the issue of whether Ms. Grant received any inducements from the prosecutor for testifying against petitioner was covered by the prosecutor during his direct examination of Ms. Grant as well as by Mr. Lee on cross-examination, and Ms. Grant consistently denied having received any such inducements. (*See* Dkt. 12, Ex. 21 at 134-38.) The issue of whether warrants were quashed in Ms. Grant's criminal proceedings in exchange for her testimony against petitioner was specifically, and repeatedly, addressed during questioning and there was simply no evidence that this occurred. (*See id.*, Ex 134-38 and 155-57.) Given the absence of any evidence in the record demonstrating that Ms. Grant did, in fact, receive inducements in exchange for her testimony, petitioner's claim fails. Accordingly, petitioner's petition for writ of habeas corpus should be denied with respect to petitioner's sixth ineffective assistance of counsel claim.

### 7.    Failure to Object to Evidence Re: Paul Cast

Petitioner asserts that Mr. Lee rendered ineffective assistance when he failed to object to evidence that Paul Cast was an accomplice to petitioner during the robbery. (Dkt. 21 at 1 and 3.) Petitioner's suggests that this evidence was improper because Mr. Cast plead guilty only to trafficking in stolen property. (*Id.* at 3.)

REPORT AND RECOMMENDATION
PAGE - 20

The Washington Supreme Court rejected this claim, explaining its conclusion as follows:

> Mr. Grant next complains that defense counsel did not object to evidence that Paul Cast was an accomplice to the charged crimes. The complaining witness testified that she was robbed and restrained by two men. Evidence that one of the men was Mr. Cast was thus relevant and material. Mr. Grant contends that Mr. Cast pleaded guilty to only trafficking in stolen property. That Mr. Cast was allegedly able to negotiate a more favorable outcome has no bearing on whether his actual role in the home invasion robbery was admissible at Mr. Grant's trial. In this connection, Mr. Grant fails to show that the trial court would have suppressed Mr. Cast's identity. (*See McFarland*, 127 Wn.2d at 333-34 (petitioner claiming ineffective assistance in not objecting to evidence must show that trial court would have suppressed evidence).

(Dkt. 35, Ex. 38 at 7.)

Petitioner offers no evidence or argument in this proceeding challenging the Supreme Court's conclusion, and the record before this Court demonstrates that the state court reasonably rejected the claim. Accordingly, petitioner's petition for writ of habeas corpus should be denied with respect to petitioner's seventh ineffective assistance of counsel claim.

### 8.    *Failure to Impeach State Witnesses*

Petitioner asserts that Mr. Lee rendered ineffective assistance when he failed to introduce evidence to impeach state witnesses. (Dkt. 21 at 1.) Petitioner identifies the evidence which he believes should have been introduced as (1) a photo of Rob Green's car, (2) video footage from the Village Inn Motel, and (3) a photograph of the victim's bathroom. (Dkt. 21 at 3.) Reference to petitioner's personal restraint petition helps to illuminate, albeit only slightly, the perceived significance of these pieces of evidence.

With respect to the car, petitioner asserted in his personal restraint petition that shortly after the robbery the victim was shown a photograph of Rob Green's car, a blue Subaru with a rear spoiler, and she stated that she was 90 percent sure that that was the car she saw in front of her house at the time of the robbery. (Dkt. 35, Ex. 31 at 18.) At trial, the victim testified that the

REPORT AND RECOMMENDATION
PAGE - 21

car used in the robbery was green and she positively identified a picture of petitioner's car as the car used in the robbery.  (*Id*.)    Petitioner believes Mr. Lee should have shown the victim a picture of Rob Green's car to impeach her testimony at trial.  (*Id*.)

With respect to the video footage, petitioner asserted in his personal restraint petition that video footage from the motel where petitioner, Ms. Grant, and Terrin Starnes stayed following the robbery would have showed that petitioner and Terrin Starnes rented a room separate from the one rented by Ms. Grant, and that petitioner entered Ms. Grant's room only to grab a backpack and never re-entered the room.  (*Id*.)  Petitioner apparently believes this video would have impeached Ms. Grant's recollection of what transpired in the days following the robbery. (*See id*.)

Finally, with respect to the photograph of the victim's bathroom, petitioner asserted in his personal restraint petition that the victim testified at trial that the suspects in the robbery opened up the bathroom door and pointed guns at her allowing only the gun to be seen, but that the photo of the bathroom shows the door opened the wrong way to permit the suspects to point guns at her.  (Dkt. 35, Ex. 31 at 19.)

The Washington Supreme Court rejected the entirety of this claim, explaining its conclusion as follows:

> Mr. Grant . . . asserts that defense counsel should have introduced certain evidence for purposes of impeaching the complaining witness and Ms. Grant. But counsel's tactical decisions as to the scope of cross-examination are presumed reasonable. *See Davis*, 152 Wn.2d at 720. There were some inconsistencies between the complaining witness's statements to police and her trial testimony, but defense counsel could conclude that none of the inconsistencies was significant enough to risk offending the jury by overly aggressive cross-examination. Mr. Grant's assertion that a photograph of the victim's bathroom would have refuted her claim of seeing Mr. Grant while she was confined during the robbery is speculative. As for Ms. Grant, Mr. Grant speculates that a motel security video showing events following the crime would have been shown that

1
2
3

> Ms. Grant's recollection of post-crime events was faulty, but he fails to show that
> the video existed at the time of trial or how showing imprecise recollection of
> events at the motel would have created a reasonable probability the trial result
> would have been different.

4    (Dkt. 35, Ex. 38 at 7-8.)

5         Petitioner offers no evidence or argument in this proceeding challenging the Supreme

6    Court's conclusion, and the record before this Court demonstrates that the state court reasonably

7    rejected the claim regarding Mr. Lee's failure to introduce the evidence cited by petitioner.  With

8    respect to the car, the trial transcript reveals that petitioner's counsel cross-examined the victim

9    regarding her description of the car, and her original statement to police that the car was blue.

10   (Dkt. 12, Ex. 21 at 62-63.)  Because Rob Green was not advanced at trial as an alternate suspect

11   in the robbery, showing the victim a picture of his car would not necessarily have enhanced Mr.

12   Lee's cross-examination of the victim.  The record demonstrates neither deficient performance

13   nor prejudice arising out of Mr. Lee's failure to impeach the victim with a picture of Rob Green's

14   car.

15        With respect to the video footage, the trial transcript reveals that some video surveillance

16   footage from the motel was obtained by police and shown to the jury, but the transcript does not

17   make clear what, specifically, was depicted on that video aside from petitioner, Paul Cast, and

18   Ms. Grant moving in and out of a hallway that led to the back exit door of the motel.  (*See id*.,

19   Ex. 21 at 168-76.)  Nothing in the record demonstrates that the video footage petitioner claims

20   should have been introduced even existed.  Moreover, Ms. Grant testified at trial that during the

21   time she was at the motel, she stayed in the room where the property was and petitioner rented a

22   separate room with Terrin Starnes.  (Dkt. 12, Ex. 21 at 147-48.)  Petitioner fails to make clear

23   how the video footage he references would have aided his defense in light of that testimony.  The

REPORT AND RECOMMENDATION
PAGE - 23

record demonstrates neither deficient performance nor prejudice arising out of Mr. Lee's failure to introduce the suggested video footage.

Finally, with respect to the photo of the bathroom, it is simply unclear what benefit petitioner believes would have been achieved by introducing the photo.  The Supreme Court reasonably determined that petitioner's assertion that the photo would have impeached in any useful way the testimony of the victim was merely speculative.  The record demonstrates neither deficient performance nor prejudice resulting from Mr. Lee's failure to introduce the photo of the bathroom.  For the foregoing reasons, petitioner's petition for writ of habeas corpus should be denied with respect to the entirety of his eighth ineffective assistance of counsel claim.

### 9.    *Failure to Correctly Convey Plea Offer*

Petitioner asserts that Mr. Lee incorrectly informed him that the state's plea offer was 144 months for an attempted kidnapping when the actual plea offer was for 113 months.  (Dkt. 21 at 1 and 3.)  The Washington Supreme Court rejected this claim because petitioner failed to establish that the state, in fact, made the plea offer suggested by petitioner:

> Mr. Grant . . . claims that counsel erroneously informed him that the State had offered a plea deal for 144 months imprisonment when the offered term was actually 113 months.  But the State has provided evidence that in Mr. Grant's case 113 months would have been below the bottom of the standard range on both charges, which was 129 to 171 months for first degree robbery and 149 to 198 months for first degree kidnapping.  Former defense counsel states by declaration that the State offered a sentence within the standard range and that there was no offer to reduce the charges.  This assertion is consistent with the State's position that it never offered a sentence below the standard range or a reduction in charges.  Mr. Grant offers no evidence to the contrary, other than his self-serving allegation that the State offered 113 months.  Mr. Grant fails to show that he is entitled to a reference hearing or other relief on this claim.  *See In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992) petitioner must support claim for relief or for reference hearing with more than bald assertions and conclusory allegations without apparent evidentiary support).

(Dkt. 35, Ex. 38 at 2-3.)

REPORT AND RECOMMENDATION
PAGE - 24

Petitioner offers no evidence or argument in this proceeding challenging the Supreme Court's conclusion, and the record demonstrates that the state court reasonably rejected the claim based on petitioner's failure to present any evidence that the state ever offered a plea deal for 113 months imprisonment.  Accordingly, petitioner's petition for writ of habeas corpus should be denied with respect to his ninth ineffective assistance of counsel claim.

### *10.*     *General Disorganization*

Petitioner asserts in his final ineffective assistance of counsel claim that Mr. Lee was generally disorganized and, at times, so disorganized that he wrote the wrong cause numbers on documents, failed to file mandatory documents, wrote the wrong set of facts in his motions, and failed to seal the record with respect to an unspecified issue concerning his expert witness Dr. Loftus.  (*See* Dkt. 21 at 1 and 3; Dkt. 35, Ex. 31 at 20.)  The Washington Supreme Court rejected this claim, concluding that petitioner failed to demonstrate the alleged deficiencies would have affected the outcome of his trial:

> In his final claim of insufficiency, Mr. Grant asserts that defense counsel was disorganized in several respects.  But Mr. Grant was entitled to a fair trial, not a perfect one.  *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 267, 172 P.3d 335 (2007).  The records provided indicate that counsel was a competent and vigorous advocate.  In a motion to dismiss, counsel allegedly misidentified Mr. Grant as the driver of the automobile at the time of his arrest.  Even if that is so, the identity of the driver was not material to the outcome of the motion.  Counsel also allegedly miswrote the cause number on one or more occasions.  But attorneys may occasionally make minor clerical errors.  Mr. Grant does not show that critical files were misplaced or that deadlines were missed because of counsel's alleged scrivener's errors.  Assuming counsel was somewhat deficient in these respects, Mr. Grant fails to show there is any reasonable probability that tidier performance would have affected the result.  *Crace*, 174 Wn.2d at 842.

> Mr. Grant also contends his counsel failed to heed the trial court's advice to move to seal the record in relation to his request for an expert witness.  To prevail on this claim Mr. Grant must show that the court would have granted a motion to seal pursuant to GR 15 and CrR 3.1(f), applying the multifactor analysis announced in *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716

REPORT AND RECOMMENDATION
PAGE - 25

(1982), and that had the file been sealed there was a reasonable probability that the result would have been different.  Mr. Grant fails to make that necessary showing.  He does not explain how the failure to seal affected his defense, and no prejudice is apparent from a review of the documents.

(Dkt. 35, Ex. 38 at 8-9.)

As with each of the preceding claims, petitioner offers no evidence or argument challenging the Supreme Court's conclusion, and the record before this Court demonstrates that the state court reasonably concluded that despite any clerical errors, of which there were admittedly several, petitioner failed to demonstrate any prejudice arising out of those errors. Accordingly, petitioner's petition for writ of habeas corpus should be denied with respect to his tenth, and final, ineffective assistance of counsel claim.

Suggestive Identification Procedure

Petitioner also asserts in his supplemental petition that the photo identification procedure was impermissibly suggestive and should have been suppressed "as derivative evidence of the 7/17/09 suppression granted by Judge Krese as it was not an independent source. . . ."  (Dkt. 21 at 4.).

Claims that identification testimony results from procedures that are unnecessarily suggestive implicate the Due Process Clause.  The United States Supreme Court has established that reliability is the key to ascertaining the admissibility of identification testimony.  *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).  The factors that must be considered in making this determination are (1) the witness's opportunity to view the defendant at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty demonstrated by the witness at the confrontation; and, (5) the amount of time elapsed between the crime and the

REPORT AND RECOMMENDATION
PAGE - 26

confrontation.  *Manson*, 432 U.S. at 114 (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

The Supreme Court made clear that these factors must be weighed against "the corrupting effect

of the suggestive identification itself."  *Manson*, 432 U.S. at 114.

The Washington Supreme Court rejected petitioner's challenge to the identification

procedure, explaining its conclusion as follows:

> Mr. Grant argues that the trial court should have suppressed the complaining witness's alleged identification of him because it was derivative of the evidence suppressed from the automobile search and was obtained by unduly suggestive means.  The State provided this court with a copy of the trial court's findings of fact and conclusions of law.  The complaining witness had a good look at the person who invaded her home.  When the police notified her that they had arrested a suspect named Terry Grant, the complaining witness told her daughter.  The daughter entered Mr. Grant's name on the internet and came across his MySpace account.[6]  The complaining witness confirmed that the man on the MySpace account was the person who invaded her home.  The revelation that the complaining witness identified Mr. Grant by that means surprised the assigned detective.  Afterward, the police asked the complaining witness to identify the suspect from a photomontage.  Writing at the bottom of the photomontage indicated that it came from the county correctional facility.  She selected Mr. Grant.
>
> There is no evident connection between the complaining witness's identification and the automobile search evidence.  As for the photomontage identification procedure, such a procedure is impermissibly suggestive if it give [sic] rise to a substantial likelihood of irreparable misidentification.  *State v. Vickers*, 148 Wn.2d 91, 118, 59 P.3d 58 (2002).  If the defendant shows as a threshold matter that the identification procedure was suggestive, the court then considers whether the procedure created a substantial likelihood of irreparable misidentification based on the totality of the circumstances.  *Id*.  Relevant circumstances include opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his or her prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.  *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).
>
> Here, the police did not suggest to the complaining witness or her

---

[6] [Washington Supreme Court footnote]  Mr. Grant also contends the victim's daughter should have been interviewed at an earlier date, but does not explain why this could have been helpful when information about her internet research was undisputed.

REPORT AND RECOMMENDATION
PAGE - 27

daughter that they search the internet for Mr. Grant's photograph; therefore, there was no law enforcement impropriety in this regard.   And standing alone, the photo identification procedure employed in this case, while not perfect due to the reference to the correctional facility, was not impermissibly suggestive.   There is no showing that the police did anything to bring attention specifically to Mr. Grant.   And even if it can be argued that the photomontage procedure was impermissibly suggestive, it did not create a substantial likelihood of irreparable misidentification in light of the total circumstances, particularly the complaining witness's extensive viewing of the perpetrator during the robbery.

   In sum, Mr. Grant fails to make an evidentiary showing sufficient to justify a reference hearing, and his legal arguments are mertiless in light of the records provided.   Because Mr. Grant fails to establish a valid basis to justify consideration of his petition on the merits, his collateral attack is properly dismissed as frivolous under RAP 16.11(b).

(Dkt. 35, Ex. 38 at 9-10.)

Petitioner offers no evidence or argument in this proceeding challenging the Supreme Court's conclusion, and the record before this Court demonstrates that the state court applied the proper standard in evaluating petitioner's claim that the victim's identification of petitioner was impermissibly suggestive, and reasonably applied that standard to the facts of petitioner's case. Accordingly, petitioner's final ground for federal habeas relief is without merit and his petition should therefore be denied with respect to this claim.

## Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.   A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."   See 28 U.S.C. § 2253(c)(3).   A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."

REPORT AND RECOMMENDATION
PAGE - 28

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in this matter.

<u>CONCLUSION</u>

For the reasons set forth above, this Court recommends that petitioner's original and supplemental federal habeas petitions be denied and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **<u>August 28, 2015</u>**.

DATED this <u>31st</u> day of July, 2015.

_____
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 29